**Bronx 1134 W. Farm Rd. LP v Arriaga**

2024 NY Slip Op 33247(U)

September 17, 2024

Civil Court of the City of New York, Bronx County

Docket Number: Index No. LT-332414-23/BX

Judge: Rina Gurung

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX: HOUSING PART L
-------------------------------------------------------------------X
BRONX 1134 WEST FARM ROAD LP,                    Index No. LT-332414-23/BX

                          Petitioner-Landlord,         **DECISION/ORDER**

        -against-
                                                       Seq. No. <u>1</u>
WINGER ARRIAGA,

                          Respondent(s)-Tenant(s).
-------------------------------------------------------------------X
Present:    Hon. Rina Gurung
            Judge, Housing Court

---

Recitation, as required by CPLR §2219(a), of the papers considered in the review of this motion:

**Papers**                                                           **Numbers[1]**
Respondent's Notice of Motion, Affirmations, and Exhibits.............................. 7-13
Petitioner's Opposition, Affidavit, and Exhibits ...……………………..………. 16-19
Respondent's Reply ........................................................................................... 20
Court File……………………………………………………………........... *Passim*

---

Upon the foregoing cited papers, the Decision and Order on this motion is as follows:

In this summary nonpayment proceeding, Respondent Winger Arriaga ("Respondent")

moves for leave to interpose an amended answer under CPLR 3025(b) raising, among other things,

warrant of habitability and overcharge defenses, and to conduct discovery on the alleged

overcharge under CPLR 408. Respondent's motion to amend is hereby granted, but the overcharge

defense raised in the Proposed Amended Answer is stricken. Accordingly, the branch of

Respondent's motion seeking leave to conduct discovery of rent records is likewise denied.

"It is settled that leave to amend a pleading shall be freely given in the absence of prejudice

or surprise[.]" *See Thompson v. Cooper*, 24 A.D.3d 203, 205 (1st Dept 2005) (citing CPLR

---

[1] NYSCEF Document Number.

1

3025(b)) (internal quotation marks and citations omitted). However, a court must also examine the proposed amendments and deny leave to amend "when the proposed pleading is palpably insufficient as a matter of law[.]" *See Ancrum v. St. Barnabas Hosp.*, 301 A.D.2d 474, 475 (1st Dept 2003).

Petitioner Bronx 1134 West Farm Road L.P. ("Petitioner") solely opposes the Proposed Amended Answer's inclusion of the warrant of habitability defense on prejudice and surprise grounds. Specifically, Petitioner argues that it would be prejudiced and surprised because it "owns and manages many buildings" – and therefore supposedly cannot "be aware of every single violation" issued by the New York City Department of Housing Preservation and Development. NYSCEF Doc. No. 16 at 2, ¶ 4-5.

This argument is without merit. A landlord's duty to comply with the warrant of habitability does not dissipate merely because a landlord adds more properties to its portfolio than it can properly manage. *See* RPL § 235-b(1) (providing that the warrant of habitability applies unless the conditions were caused "by the misconduct of the tenant or lessee or persons under his direction or control").

Respondent also seeks leave to interpose a rent overcharge defense and to conduct discovery for this defense, citing to the "ample need" standard articulated in *New York Univ. v. Farkas*, 121 Misc. 2d 643 (Civ Ct, New York County 1983). There is no dispute that the subject premises are rent stabilized. However, according to Respondent's counsel, Respondent first moved into the subject premises in October of 2021 and was provided with, "[u]pon information and belief, a non-rent stabilized lease with a rent of $1500." NYSCEF Doc. No. 8 at 12, ¶ 48. She goes on to affirm that Petitioner offered Respondent a rent stabilized lease in October of 2022, indicating a preferential rent of $1,584.75 with a legal rent of $2,940.23, but again allegedly

2

lacking the requisite lease riders. *Id.* at ¶ 49.[2]

Pursuant to the Housing Stability and Tenant Protection Act of 2019 ("HSTPA"), L 2019, ch 36, § 1, part F, in the absence of fraud, "the legal regulated rent for purposes of determining an overcharge, shall be the rent indicated in the most recent reliable annual registration statement filed and served upon the tenant six or more years prior to the most recent registration statement, (or, if more recently filed, the initial registration statement) plus in each case any subsequent lawful increases and adjustments." Rent Stabilization Law ("RSL") (Administrative Code of City of NY) § 26-516(a)(i). After the Court of Appeals decided *Matter of Regina Metro. Co., LLC v NY State Div. of Hous. & Community Renewal*, 35 NY3d 332 (2020), holding that the HSTPA's overcharge calculation provisions were unconstitutionally retroactive as applied to four appeals that were pending at the time of the HSTPA's enactment, the New York State Division of Housing and Community Renewal ("DHCR") amended the Rent Stabilization Code, providing clarification on how to apply RSL § 26-516(a)(i) without running afoul of the retroactivity issues implicated in *Regina*.

Under these amendments, for proceedings commenced on or after June 14, 2019, the base date is defined as either six years prior to when an overcharge claim is first raised or, if the registration from six years prior is "unreliable," back further to the last "reliable" registration, unless the last reliable registration precedes June 14, 2015, in which case the base date rent becomes June 14, 2015. Rent Stabilization Code ("RSC") (9 NYCRR) § 2526.7(a)(1). "A rent registration shall be considered to be reliable if, prior to the filing of such registration statement,

---

[2] It is unclear where Respondent's counsel derives these facts about the alleged October 2021 and October 2022 leases from, as Respondent only affirms that he moved into the subject premises on or about Fall of 2021, and that he never received any rent stabilized lease riders. Respondent does not allege any details about whether his leases indicated the rent stabilized status of his apartment or what the agreed upon rents were in those leases. Nor are there any copies of the October 2021 and 2022 leases annexed to Respondent's motion for the Court's review. And while Respondent's counsel states that Respondent was charged a monthly rent of $1,584.75 starting in October of 2022, the Petition claims the monthly rent is $1,548.75.

3

and subsequent to June 14, 2015, the rent history contains no unexplained increases in the rent." RSC § 2526.7(a)(2). Therefore, because Respondent first raised his overcharge claim on March 29, 2024, the base date for his claim is March 29, 2018 – unless there are any unexplained increases in the rent prior to that date and after June 14, 2015. However, no such unexplained increases appear on the rent history for the subject premises from June 14, 2015, to the present. *See* NYSCEF Doc. No. 13 at 5.[3] Accordingly, the base date rent is $2,786.14. Respondent does not allege that he was ever charged above $1,584.75 throughout his entire tenancy and therefore there was no rent overcharge.[4]

Apparently aware of the obstacle posed by the base date rent to his overcharge defense, Respondent also alleges that there was a fraudulent scheme to deregulate the subject premises which tainted the reliability of the base date rent. If such a scheme contaminated the reliability of the base date rent, then the Court must apply the default formula to identify the correct base date rent instead of relying on the product of fraud. *See Regina Metro. Co.*, 35 N.Y.3d at 355. And if Respondent can demonstrate that there are sufficient indicia of a fraudulent scheme to deregulate an apartment such that the rent reported on the base date may have been rendered unreliable, the Court must examine the entire rent history, including prior to the base date, for the limited purpose of reviewing the propriety of the base date rent. *See Grimm v. State, Div. of Hous. & Cmty. Renewal Off. of Rent Admin.*, 68 A.D.3d 29, 33 (2009) (noting it would be an "abuse of discretion"

---

[3] The first registration after June 14, 2015, which is the 2016 registration, reports a legal rent of $2,786.14, and this reported legal rent is not increased until the 2019 registration pursuant to an alleged major capital improvement ("MCI") to $2,805.60. Subsequently, Petitioner apparently reversed this MCI increase, and the legal rent is reported as reverting back to $2,786.14 for the 2020 registration, before increasing to $2,847.68 for the 2021 registration. The legal rent then remains at $2,847.68 for the 2022 registration – which appears to report Respondent's October 2021 lease.

[4] Respondent's allegation that Petitioner never provided a lease rider required by the Rent Stabilization Code does not affect this outcome, as the penalty for failure to furnish a required rider is restricting the collectible rent to the amount set by the prior lease, "unless the owner can establish that the rent collected was otherwise legal." *See 720 Riverside Owners Corp. v Bowen*, 83 Misc 3d 12, 15 (App Term, 1st Dept 2024) (quoting RSC § 2522.5(c)(3)) (internal quotation marks omitted).

to not investigate possible fraud), *affd* 15 N.Y.3d 358 (2010).

To this end Respondent alleges multiple discrepancies in the DHCR rent history for the subject premises, which begins with a 1990 registration and ends with a 2022 registration. The alleged discrepancies in the rent history include that there are unexplained rent increases in the 2003, 2006, and 2007 registrations, beyond what would have been justified by the applicable vacancy increases alone, that the reported vacancy information and lease dates on the 1991-1993, the 1997-1998, and the 1999 registrations do not support the corresponding reported vacancy increases, and that Respondent could neither locate records of an individualized apartment improvement ("IAI") nor a MCI reported on the 1993 and 2019 registrations respectively.[5]

Respondent argues that these discrepancies, in conjunction with Petitioner's alleged failure to provide a rent stabilized vacancy lease and requisite riders, amount to substantial indicia of fraud mandating that the Court review rent records reaching back to 1989 – when the first registered lease was reported to have commenced – for the purpose of identifying whether there was a fraudulent scheme to deregulate the subject premises. The Parties cite to *Burrows v. 75-25 153rd Street, LLC*, 215 A.D.3d 105 (1st Dept 2023), an Appellate Division decision holding that a tenant alleging a fraudulent scheme to deregulate must also assert reasonable reliance upon a misrepresentation to sustain the fraud claim, with Respondent seeking to distinguish *Burrows* from the facts of this proceeding.

As a threshold matter, it should be noted that *Burrows* was decided before recent legislative chapter amendments which establish that the standard for demonstrating a fraudulent scheme to deregulate a rent stabilized apartment is distinct from the standard for common law fraud. Most

---

[5] Respondent claims that the 2021 registration also displays an impermissible legal rent increase in the renewal lease from $2,786.14 to $2,847.68, which he alleges was greater than the 2.5% renewal limit in effect at the time, but this appears to be a calculation error as that increase amounts only to a 2.2% increase.

relevantly, these amendments include that:

> 2-a. When a colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit is properly raised as part of a proceeding before a court of competent jurisdiction or the state division of housing and community renewal, a court of competent jurisdiction or the state division of housing and community renewal shall issue a determination as to whether the owner knowingly engaged in such fraudulent scheme after a consideration of the totality of the circumstances.
>
> In making such determination, the court or the division shall consider all of the relevant facts and all applicable statutory and regulatory law and controlling authorities, *provided that there need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury, were satisfied in order to make a determination that a fraudulent scheme to deregulate a unit was committed* if the totality of the  circumstances nonetheless indicate that such fraudulent scheme to deregulate a unit was committed.

L 2024, ch 95, § 4 (emphasis added).

Thus, the question is not whether Respondent sufficiently pled all elements of common law fraud including reasonable reliance on a misrepresentation, but instead whether Respondent raises a colorable claim that there was a fraudulent scheme to deregulate the subject premises.  But even under this relaxed standard Respondent fails to adequately plead the existence of a potentially meritorious claim that there was a fraudulent scheme to deregulate.  Respondent's conclusory allegation of a fraudulent scheme to deregulate the subject premises coupled with a rote recitation of various "indicia of fraud" is insufficient to give rise to this Court's duty to review the entirety of the rent history.  The primary obstacle to the reliefs Respondent seeks here is that Respondent fails to articulate how these discrepancies work together to paint a plausible picture of a fraudulent scheme to deregulate the subject premises.  *See Grimm*, 15 N.Y.3d at 367 ("a mere allegation of fraud alone, without more, will not be sufficient to require DHCR to inquire further"); CPLR

6

3016(b) ("Where a cause of action or defense is based upon misrepresentation, fraud, [or] mistake [ . . . ] the circumstances constituting the wrong shall be stated in detail."). It is incumbent on Respondent to supply more than a "generalized claim of fraud" and to allege "substantial evidence pointing to the setting of an illegal rent in connection with a stratagem devised [ . . . ] to remove tenant['s] apartment from the protections of rent stabilization[.]" *See Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 16 (2015).

While the rent history shows three increases to the legal registered rent identified by Respondent that are not solely explained by vacancy increases, including the 19.54% increase in 2003, the 21% increase in 2006, and the 25.48% increase in 2007, Respondent proffers no explanation as to how these increases illustrate a potential fraudulent scheme to deregulate the subject premises. After all, the 2003 registration is "off" by 1.54% (approximately $18.22) from the applicable 18% increase, the 2006 registration by 3.25-3.75% (approximately $48.99-56.53 depending on whether the tenant pays for heat) from the applicable 17.75-17.25% increase, and the 2007 registration by 8.48% (approximately $154.80) from the applicable 17% increase – and this is assuming the prior landlord performed no IAIs justifying these differences.[6] *See Boyd v. New York State Div. of Hous. & Cmty. Renewal*, 23 N.Y.3d 999, 1000–01 (2014) (reversing a finding of substantial indicia of fraud based on a large increase in legal rent from $572.00 to $1,750.00 after a vacancy), *rev'g* 110 A.D.3d 594 (1st Dept 2013).

Moreover, Respondent's argument that these increases were part of a fraudulent scheme to deregulate is undermined by the fact that the legal rent on the 2007 registration would have exceeded the $2,000.00 deregulation threshold then in effect regardless of whether the legal rent

---

[6] Prior to the HSTPA, landlords with 35 or fewer buildings could add 1/40th of the expenses for an IAI to the legal rent, while owners with more than 35 buildings could add 1/60th of those expenses to the legal rent. Former Administrative Code of City of NY § 26-511(c)(13), amended by L 2019, ch 36, § 1, Part K.

7

had been $2,071.91, the legal rent adjusted to account for the alleged discrepancies, or the $2,290.60 actually on the 2007 registration. *Compare* former Administrative Code of City of NY § 26-504.2 (setting the deregulation threshold), repealed by L 2019, ch 36, § 1, part D, *with* NYSCEF Doc. No. 13 at 4. Respondent's claim that he was unable to locate records justifying the IAI increases reported in the 1993 registration also fails to sustain his fraud claim because Respondent is unable to articulate what role he believes this single $265.76 IAI increase in 1993 played in the prior landlord's alleged fraudulent scheme. *See Breen v. 330 E. 50th Partners, L.P.*, 154 A.D.3d 583, 584 (1st Dept 2017) (noting that neither a "sizeable increase" in the rent nor "mere skepticism about the quality or extent" of IAIs "were sufficient to establish a colorable claim of fraud").[7]

Respondent also attempts to bolster his fraud claim by alleging contradictions in the rent history. He claims that the lease dates included in the rent history are at odds with claimed vacancy increases for the 1991-93, the 1997-98, and the 1999 registrations, but aside from the registrations for 1997-98, when the next lease is reported as commencing on April 1, 1998, before the prior lease expired on January 31, 1999, no such contradictions exist.[8] Setting aside the possibility that the tenant in the 1997 registration prematurely vacated and surrendered the apartment, Respondent

---

[7] As to the MCI increase Respondent allegedly could locate no records for, Petitioner appears to have removed the MCI increase of $19.46 reported on the 2019 registration, because on the 2020 registration it reverted the legal rent back to the $2,786.14 reported on the 2018 registration.

[8] While Respondent is correct that the legal rent is not adjusted after a vacancy until the next incoming tenant executes a vacancy lease, there does not appear to be any improper hikes to the legal rent on the registrations for tenants moving in after the prior landlord used "placeholder" registrations for years when the apartment was allegedly vacant. This placeholder practice of registering a legal rent with the expected vacancy increase included during years when the apartment was allegedly vacant could have been problematic and potentially indicia of fraud except that, here, there is no indication that the legal rents for the post-placeholder vacancy leases were unlawfully inflated and therefore part of a fraudulent scheme to deregulate the subject premises. For example, the prior landlord registered the 1998 legal rent as $885.03, before then claiming a vacancy increase and registering the 1999 legal rent as $1,115.22, even though the apartment was still reportedly vacant, and no vacancy lease was yet executed. The prior landlord then reported the 2000 legal rent as $1,115.26 that following year when a new tenant allegedly executed a one-year vacancy lease, and so the prior landlord's premature inclusion of a vacancy increase on the 1999 registration did not serve to inflate the legal rent.

8

does not allege with sufficient specificity how this lone contradiction supports his fraud claim.

"Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." CPLR 3013. Yet, the Court is left without an answer as to what stratagem(s) for deregulation Respondent believes the prior landlord and/or Petitioner employed prior to the base date, and how the indicia he identifies informs his position that a fraudulent scheme existed. *See Conason*, 25 N.Y.3d at 16. Notably, there are no missing registrations from 1990 to 2022 with only a few late registrations in this 32-year span, and, apart from the relatively minor deviations in the 2003, 2006, and 2007 registrations discussed *supra*, the increases on the registrations appear facially proper. In the face of this ostensibly reliable rent history, Respondent must do more than merely assert fraud and recite a smattering of indicia, he must articulate, with sufficient specificity, what possible fraudulent schemes he believes took place and why.

Therefore, Respondent's Proposed Amended Answer is deemed duly served and filed, except that Paragraphs 15-23 of his answer, raising an overcharge defense, are stricken.[9] Respondent's motion for leave to conduct discovery on the overcharge defense is likewise denied.

All parties are ordered to return to **Bronx Housing Court, Part L, Room 450 on October 8, 2024 at 9:30 AM** for a pre-trial conference.

The foregoing constitutes the Decision and Order of this court.

Dated: Bronx, New York
September 17, 2024

_____
Hon. Rina Gurung
Judge, Housing Court

---

[9] Respondent's Proposed Amended Answer is NYSCEF Doc. No. 10.