[886 NYS2d 111]

In the Matter of SYLVIE GRIMM, Respondent, v STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION, Appellant, and 151 OWNERS CORP., Intervenor-Appellant.

First Department, September 24, 2009

---

**APPEARANCES OF COUNSEL**

*Gary R. Connor,* New York City (*Martin B. Schneider* of counsel), for appellant.

*Belkin Burden Wenig & Goldman, LLP,* New York City (*Magda L. Cruz, Sherwin Belkin, S. Stewart Smith* and *Kristine L. Grinberg* of counsel), for intervenor-appellant.

*Kenneth B. Hawco,* New York City, for respondent.

**OPINION OF THE COURT**

ACOSTA, J.

In this appeal we are asked to consider the obligation of respondent Division of Housing and Community Renewal (DHCR) when a rent overcharge complainant makes a colorable argument that there are genuine issues that an owner committed fraud by charging an illegal rent, even if more than four years passed before the complaint was filed.

The basic facts are undisputed. The rent-stabilized apartment at issue was registered with DHCR in 1999 at a monthly rent of $578.96. The following year, instead of using the required rent-setting formula to determine the rent that it could legally charge the next tenants of the apartment, the owner, through an agent, notified prospective tenants Tracy Hartman and Jon Bozak that the rent for the subject apartment was a fictitious and illegal $2,000 per month, but that if Hartman and Bozak agreed to make repairs and paint the apartment at their own expense, the rent would be reduced to an equally fictitious and illegal $1,450. The offer was accepted, and the rent was memorialized in a nonregulated written lease agreement. Neither Hartman nor Bozak ever received a statement showing the apartment was registered with DHCR. The rent for the year 2000 represented a 250% increase over the previous year.

On April 1, 2004 petitioner moved into the apartment, at the preexisting illegal rental rate of $1,450. Thereafter, on July 19, 2005, petitioner filed a rent overcharge complaint with DHCR. In its answer, the owner, intervenor 151 Owners Corp., acknowledged that the premises had not been registered since 1999. In September 2005, 151 Owners Corp., through its purported managing agent, Michelle Goldstein, filed registration statements for 2001, 2002, 2003, 2004 and 2005.

In an order dated June 21, 2006, the DHCR Rent Administrator denied petitioner's complaint of rent overcharge on the ground that the base date of the proceeding is July 19, 2001, which was four years prior to the filing date of the complaint (at which time the rent was $1,450), and that the rent adjustments subsequent to the base date have been lawful, so that there was no rent overcharge. The Rent Administrator erroneously failed to address the issue of whether the registration statement in effect on the base date was unreliable because of the possibility that the owner had committed fraud by charging an illegal rent to the previous tenants of the apartment. Petitioner subsequently filed a petition for administrative review, which was denied by DHCR. The determination simply calculated the rent, assuming without discussion that the registration on the base date was legitimate.

The Rent Regulation Reform Act of 1997 (RRRA) (L 1997, ch 116) clarified and reinforced that the statute of limitations for a rent overcharge complaint is four years.* However, as this Court has previously held, a default formula "should be used to

---

* "Except as to complaints [not pertinent here], the legal regulated rent for purposes of determining an overcharge, shall be the rent indicated in the annual registration statement filed four years prior to the most recent registration statement, . . . plus in each case any subsequent lawful increases and adjustments. Where the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter. . . .

"Except as provided under clauses [not applicable here], a complaint under this subdivision shall be filed with [DHCR] within four years of the first overcharge alleged and no determination of an overcharge and no award or *calculation* of an award of the amount of an overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed . . . This paragraph shall preclude examination of the rental history of the housing accommodation prior to the four-year pe-

determine the base rent in an overcharge case where . . . no valid rent registration statement was on file as of the base date" (*Levinson v 390 W. End Assoc., L.L.C.*, 22 AD3d 397, 401 [2005], citing *Thornton v Baron*, 5 NY3d 175, 180 n 1 [2005]). That is, while the applicable four-year statute of limitations reflects a legislative policy to "alleviate the burden on honest landlords to retain rent records indefinitely" (5 NY3d at 181), and thus precludes us from using any rental history prior to the base date, where there is fraud or an unlawful rent, the lease is rendered void. The legal rent should be established by using the lowest rent charged for a rent-stabilized apartment with the same number of rooms in the same building on the base date.

Based on the facts in this case, DHCR acted arbitrarily, capriciously and in disregard of its obligation in failing to consider whether the rent charged to petitioner was unlawful, and thus whether establishing a rental rate based on the *Thornton* formula was appropriate. The tenants immediately preceding petitioner were never given a rent-stabilized lease rider, were never provided with annual registration statements, and were not told how their initial monthly rent was calculated. Therefore, if the rent in 2001 was established at an illegal rate, that lease as well as petitioner's lease at the same rate is a nullity, and the default formula would be the appropriate mechanism for determining the base rent. Sanctioning the owner's behavior on a statute of limitations ground "can result in a future tenant having to pay more than the legal stabilized rent for a unit, a prospect which militates in favor of voiding agreements such as this in order to prevent abuse and promote enforcement of lawful regulated rents" (*Drucker v Mauro*, 30 AD3d 37, 40 [2006], *lv dismissed* 7 NY3d 844 [2006]). Knowing that the owner agreed to "lower" the rent to the previous tenants should have caused DHCR to determine whether the owner complied with rent regulations rather than to summarily dismiss petitioner's rent overcharge complaint.

The dissent attempts to distinguish *Thornton* in order to support its contention here that DHCR acted rationally. The dissent correctly points out that the Court of Appeals properly applied the default formula in *Thornton*, since the landlord in that case improperly removed the apartment from rent stabilization,

---

riod preceding the filing of a complaint pursuant to this subdivision" (Rent Stabilization Law [Administrative Code of City of NY] § 26-516 [a] [2] [emphasis added]).

thus rendering the leases void ab initio. However, that is precisely why remand to DHCR is appropriate here, where there are indicia of fraud. Given the specific facts of this case, DHCR should not be allowed to turn a blind eye to what could be fraud and an attempt by the landlord to circumvent the Rent Stabilization Law. Our holding merely follows the holding in *Thornton*. If DHCR fulfills its obligation to investigate whether there was fraud by the landlord, and finds that there was indeed fraud, then use of the default formula would be necessitated. Unlike what the dissent suggests, our holding does not summarily mandate use of the default formula in the instant case.

The dissent also ignores our explicit holding in *Drucker*, based on well-settled law that "the parties to a lease governing a rent-stabilized apartment cannot, by agreement, incorporate terms that compromise the integrity and enforcement of the Rent Stabilization Law. Any lease provision that subverts a protection afforded by the rent stabilization scheme is not merely voidable, but void" (*Drucker*, 30 AD3d at 39). The dissent seems to conflate when the default formula should be applied with DHCR's affirmative obligation to determine whether fraud has been committed in instances such as this.

Here, DHCR also inexplicably failed to examine the peculiar nature of the transfer of the building and to consider the connection between the prior owner and the current owner. The current owner contends that it purchased the building from a previous owner, giving the impression that there was no connection between the two. However, although the two owners have different corporate names, they are both controlled by the same individual. In fact, title to the building was transferred without any purchase price or tax being paid. In circumstances where, as here, there is an indication of possible fraud that would render the rent records unreliable, it is an abuse of discretion for DHCR not to investigate it. To be sure, if DHCR is permitted to turn a blind eye to a situation such as this, the limited exception to the four-year statute of limitations is nugatory, and the protections afforded by the Rent Stabilization Law can be subverted to the detriment of those in need of affordable housing.

Finally, the fact that the owner filed registration statements with DHCR for 2001, 2002, 2003, 2004 and 2005 is not dispositive of whether the rent of $1,450 is the legal rent under the Rent Stabilization Code. If the owner engaged in fraud in setting an excessive rent, the Court of Appeals has made it clear

that it should not be allowed to hide behind the four-year statute of limitations. "[A]n unscrupulous landlord . . . could register a wholly fictitious, exorbitant rent and, as long as the fraud is not discovered for four years, render that rent unchallengeable. That surely was not the intention of the Legislature when it enacted the RRRA" (*Thornton*, 5 NY3d at 181).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered January 11, 2008, which vacated a February 21, 2007 determination of respondent DHCR denying petitioner's rent overcharge complaint and remanded the matter to DHCR to consider whether the registration statement for petitioner's apartment on the base date (July 19, 2001) was reliable, should be affirmed, without costs.

BUCKLEY, J. (dissenting). I would find that the Division of Housing and Community Renewal (DHCR) acted rationally in complying with the legislative intent expressed in the statute of limitations set forth in CPLR 213-a and Rent Stabilization Law (Administrative Code of City of NY) § 26-516 (a).

CPLR 213-a provides:

> "An action on a residential rent overcharge shall be commenced within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years before the action is commenced. This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action."

The CPLR thus expressly states that the four-year statute of limitations applies to both an initial determination of whether there was an overcharge and any calculation of the amount of an overcharge. The statute goes even further in specifically declaring that the rental history predating the four-year period shall not be examined.

Similarly, Rent Stabilization Law § 26-516 (a) states:

> "Except as to complaints [not pertinent herein], the legal regulated rent for purposes of determining an overcharge, shall be the rent indicated in the an-

nual registration statement filed four years prior to the most recent registration statement, . . . plus in each case any subsequent lawful increases and adjustments. Where the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter. . . .

"(2) Except as provided under clauses [not applicable herein], a complaint under this subdivision shall be filed with [DHCR] within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of an overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed. . . . This paragraph shall preclude examination of the rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint pursuant to this subdivision."

The only basis for finding an overcharge with respect to the subject apartment, as alleged in petitioner's July 2005 complaint, is an examination of the rental history in 1999, which is beyond the four-year period permitted by the statutes. The statutes specifically prohibit an examination of the rental history more than four years before the complaint for the purpose of finding an overcharge: "no determination of an overcharge . . . may be based upon an overcharge having occurred more than four years before the action is commenced" (CPLR 213-a); "no determination of an overcharge . . . may be based upon an overcharge having occurred more than four years before the complaint is filed" (Rent Stabilization Law § 26-516 [a] [2]). To eliminate any confusion, the Legislature added: "This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action" (CPLR 213-a; see Rent Stabilization Law § 26-516 [a] [2] [using nearly identical language]). As this Court has previously recognized, that "legislative scheme specifically preclude[s] examination of the rental history of the housing accommodation prior to the four-year period preceding the filing of the complaint even where the

prior rental history clearly indicates that an unauthorized rent increase had been imposed" (*Matter of Hatanaka v Lynch*, 304 AD2d 325, 326 [2003] [citations and internal quotation marks omitted]).

The majority disregards those express legislative statements by using the 1999 rental history to establish that there was an overcharge. The majority's use of a default formula (the lowest rent charged for a rent-stabilized apartment with the same number of rooms in the same building on the base date) rather than the rental history to calculate the amount of the alleged overcharge does not cure the statutory elision, but merely complies with the second part of the statutes, that "no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years" before the action is commenced (CPLR 213-a; Rent Stabilization Law § 26-516 [a] [2]).

As justification for ignoring the explicit legislative language, the majority asserts that the statute of limitations was intended to alleviate the burden on honest landlords, not fraudulent ones, in maintaining rent records. However, the same general goal is true of all statutes of limitations: to grant defendants repose from claims that have lain dormant past a certain specified time, at which point evidence may have been lost, memories faded, and witnesses disappeared (*see Blanco v American Tel. & Tel. Co.*, 90 NY2d 757, 773 [1997]). By their very nature, statutes of limitations are bright-line rules that will result in the preclusion of some meritorious claims. The fact that some fraudulent landlords might escape liability is not a valid ground for ignoring the statute of limitations; indeed, even causes of action for fraud are subject to time limitations periods (*see* CPLR 213 [8]).

*Thornton v Baron* (5 NY3d 175 [2005]) is not to the contrary. In *Thornton*, the Court of Appeals reiterated that an apartment's rental history beyond four years prior to the filing of an overcharge complaint "may not be examined" and that any rent before that four-year period is "of no relevance" (*id.* at 180). Thus, the Court of Appeals expressly rejected the proposition embraced by the majority, that whenever there are indicia of fraud, DHCR must investigate, no matter how old those indicia are. The Court in *Thornton* used the default formula to ascertain the correct rent because there were no valid registration statements for the base date. There was no question that the landlord in *Thornton* had improperly attempted to remove

multiple apartments from rent stabilization by colluding with the tenants to falsely represent in the leases that the apartments were nonprimary residences, and therefore exempt from rent stabilization, and to obtain consent judgments to that effect. The nonstabilized leases were therefore void ab initio, and the rent registration statements upon which they were based were also a nullity, thus leaving the Court no recourse but to utilize the DHCR default formula. Unlike *Thornton*, the instant case does not involve an apartment that was improperly taken out of rent stabilization. *Thornton* is further distinguishable in that the Court of Appeals did not consider the rental history prior to the base date for any purpose, whereas the majority can only establish a rent overcharge by examining the rental history predating the four-year period. Moreover, DHCR's decision here, to only consider the rental history within the allowable time frame, is consistent with its approach in *Thornton*; in contrast to the Court of Appeals, which deferred to the determination of DHCR, the agency with expertise in rent stabilization, the majority would reject DHCR's decision as arbitrary and irrational.

For the reasons discussed, *supra*, I would find that DHCR was not arbitrary or capricious in obeying the legislative mandates set forth in CPLR 213-a and Rent Stabilization Law § 26-516 (a).

ANDRIAS, J.P., and CATTERSON, J., concur with ACOSTA, J.; FRIEDMAN and BUCKLEY, JJ., dissent in a separate opinion by BUCKLEY, J.

Order and judgment (one paper) of the Supreme Court, New York County, entered January 11, 2008, affirmed, without costs.