1532-1609 Ocean Ave LLC v Hertzan (2024 NY Slip Op 24180)

[*1]

1532-1609 Ocean Ave LLC v Hertzan

2024 NY Slip Op 24180

Decided on June 21, 2024

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on June 21, 2024
Civil Court of the City of New York, Kings County

1532-1609 Ocean Ave LLC, Petitioner,

against
Dena J. Hertzan, Respondent.

Index No. 312517-23

Law Office of Stuart Jacobs, Esq., for the petitioner 
New York Legal Assistance Group (Jared Riser, Esq.), for the respondent

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc Nos: 9-29.
PROCEDURAL POSTURE AND BACKGROUND
This is a nonpayment proceeding commenced against Dena Hertzan ("respondent") on the basis of an unregulated lease agreement to pay rent in the amount of $1,800 per month commencing April 1, 2020 and expiring March 31, 2021. (NYSCEF Doc No. 1, petition ¶ 2; NYSCEF Doc No. 13 at 3-8.) The petition pleads that the premises are subject to the Rent Stabilization Law ("RSL"). (NYSCEF Doc No. 1, petition ¶ 7.) Respondent answered the petition through her attorney on May 17, 2023, and asserted, as is relevant for this motion, a rent overcharge defense and counterclaim. (NYSCEF Doc No. 4, attorney answer ¶¶ 10-19.)
Respondent moved for leave to amend the answer filed on May 17, 2023, to include "an overcharge counterclaim pleading a common law fraudulent scheme to deregulate (emphasis added)." (NYSCEF Doc No. 9, notice of motion [sequence 1]; NYSCEF Doc No. 10, respondent's attorney's affirmation ¶ 8; NYSCEF Doc No. 14, proposed amended answer.) Respondent also moved for discovery related to her amended claims and defenses. (NYSCEF Doc No. 17, respondent's exhibit E, proposed discovery demands.) Petitioner opposed on the basis that "[r]espondent has not sufficiently plead[ed] fraud or demonstrated the common law elements of fraud as articulated in Regina Metro Co. LLC v State Div. of Hous. & Community Renewal, 35 NY3d 332 (2020)" and Burrows v 75-25 153rd Street LLC, 215 AD3d 105 (1st Dept 2023). (NYSCEF Doc No. 20, petitioner's attorney's affirmation in opposition ¶¶ 3, 5.) On January 16, 2024, respondent's attorney filed a reply affirmation. On February 26, 2024, the parties conferenced the proceeding and provided the court with a draft decision/order, which the court so-ordered, whereby the petition was amended sua sponte "to reflect [the] premises [are] unregulated," and adjourned the proceeding to April 25, 2024 for oral argument. (NYSCEF Doc No. 26, decision/rider.)
In the meantime, two identical bills passed both the State Assembly and Senate, signed by the Governor into law on December 22, 2023, regarding the scope of the "fraud exception" to [*2]the "look back" restriction that applies to consideration of documents outside of the relevant statute of limitations. (L 2023, ch 760, Part B, § 2 (b).) On March 1, 2024, the Governor signed another bill into law, amending the December 2023 law as it relates to the "fraud exception." (L 2024, ch 95, § 4.) On May 9, 2024, the parties agreed that the changes in law could affect the outcome of respondent's motion, depending on the court's interpretation of the new law. Accordingly, the parties stipulated on the record that respondent would withdraw her reply papers, and file them anew to include arguments regarding the relevant Chapter Amendment. (Id.) Petitioner was permitted a sur-reply, such that both parties had the opportunity to present their individual constructions of the new law. Respondent's original motion and petitioner's opposition were to remain part of the record, along with all exhibits. (NYSCEF Doc No. 27, adjournment and briefing schedule order.) Oral argument was held on the record on June 7, 2024.
APPLICABLE LAW AND ARGUMENTS
Applicable Law [FN1]
On April 13, 2023, the Appellate Division, First Department issued Burrows v 75-25 153rd St., LLC, 215 AD3d 105 (1st Dept 2023). The Burrows court held that respondent had failed to sufficiently plead the common law elements of fraud as required by Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332 (2020).[FN2]
After New York courts almost universally agreed that a traditional common law fraud exception to the four-year (now six year)[FN3]
evidentiary bar (commonly referred to as the "look back period") must be properly pleaded, Burrows held that the element of justifiable reliance could not be established "as a matter of law" if public records, specifically the Division of Housing and Community Renewal ("DHCR") rent registration history, could be examined to reveal a representation of fact upon which a tenant claiming a fraudulent scheme to deregulate could not have justifiably relied. (Burrows, 215 AD3d at 109.) After Burrows, claims of fraud were eliminated at the pleading stage because "disclosure in the publicly available rental histories of the discrepant [*3]figures for legal regulated rent and preferential rent negates any inference of fraud as a matter of law (emphasis added)."[FN4]
(Id. at 113.) Burrows transformed the subjective element of justifiable reliance, generally not susceptible to dismissal before trial, into an objective, bright-line rule applied in this context to proceedings involving parties of unequal sophistication and bargaining power. [FN5]

The Legislature acted swiftly "in direct response [to Burrows] . . . to retroactively redefine 'fraud' under the pre-HSTPA [Housing Stability and Tenant Protection Act of 2019] law."[FN6]
On June 20, 2023, just two months after Burrows was handed down, the legislature passed a bill, which entirely eliminated common law fraud from the calculus of fraudulent overcharges stemming from a fraudulent deregulation. On December 23, 2023, the Governor signed the bill into law. Chapter 760 of the Laws of New York of 2023 took effect immediately and stated that:
"With respect to the calculation of legal rents for the period either prior to or subsequent to June 14, 2019, an owner shall be deemed to have committed fraud if the owner shall have committed a material breach of any duty, arising under statutory, administrative or common law, to disclose truthfully to any tenant, government agency or judicial or administrative tribunal, the rent, regulatory status, or lease information, for purposes of claiming an unlawful rent or claiming to have deregulated an apartment, whether or not the owner's conduct would be considered fraud under the common law, and whether or not a complaining tenant specifically relied on untruthful or misleading statements in registrations, leases, or other documents (emphasis added). The following conduct shall be presumed to have been the product of such fraud: (1) the unlawful deregulation of any apartment, including such deregulation as results from [*4]claiming an unlawful increase such as would have brought the rent over the deregulation threshold that existed under prior law, unless the landlord can prove good faith reliance on a directive or ruling by an administrative agency or court . . . ." (L 2023, ch 760, Part B, § 2 (b).)
Just as many believed that Burrows had gone too far, it was surmised the L 2023, ch 760 would pose the same kind of constitutional retroactivity questions that arose in the wake of Regina.[FN7]
On March 1, 2024, after debate on the Senate floor,[FN8]
the Governor signed into law Senate Bill 8011/Assembly Bill 8506 (the "Chapter Amendments"), which amended Section 2 of Part B of Chapter 760 the Laws of 2023. Relevant here is the following section:
2-a. When a colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit is properly raised as part of a proceeding before a court of competent jurisdiction or the state division of housing and community renewal, a court of competent jurisdiction or the state division of housing and community renewal shall issue a determination as to whether the owner knowingly engaged in such fraudulent scheme after a consideration of the totality of the circumstances (emphasis added).
In making such determination, the court or the division shall consider all of the relevant facts and all applicable statutory and regulatory law and controlling authorities, provided that there need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury, were satisfied in order to make a determination that a fraudulent scheme to deregulate a unit was committed if the totality of the circumstances nonetheless indicate that such fraudulent scheme to deregulate a unit was committed (emphases added)." (L 2024, ch 95, § 4.)
The Chapter Amendments "shall take effect immediately and shall apply to any action or proceeding in any court or any application, complaint or proceeding before an administrative agency on the effective date of this act." (Id., § 5.) Thus, the amended version is effective as of December 23, 2023, the date the Governor signed the original bill into law. The amendment relevant to this decision is interpreted herein; and it has been portended that construing the language will prove challenging.[FN9]

Arguments
Respondent's attorney correctly advances that petitioner has not set forth any specific denial of the alleged facts underlying respondent's claims of fraudulent deregulation and fraudulent overcharge in its attorney's opposition to respondent's motion to amend her answer and for leave to conduct discovery. In opposition to respondent's motion, petitioner relies almost exclusively on the heightened common law pleading standard ostensibly espoused in Regina Metro Co. LLC v State Div. of Hous. & Community Renewal, 35 NY3d 332 (2020), which courts embraced as applying to pre-HSTPA claims of fraudulent deregulation and overcharges stemming from same. In support of its position, petitioner cites to Burrows, Gridley v Turnbury Village LLC, 196 AD3d 95 (2d Dept 2021), and Woodson v Convent I LLC, 216 AD3d 585 (1st Dept. 2023). Petitioner's premise is that because respondent does not plead each element of common law fraud in detail, respondent has not stated a cause of action upon which the court could find ample need for discovery.[FN10]

Enter the Chapter Amendments, specifically L 2024, ch 95, § 4. Respondent argues that "[t]he new law requires the [c]ourt to look at the totality of the circumstances to determine whether an owner engaged in a fraudulent scheme to deregulate the unit." (NYSCEF Doc No. 28, respondent's attorney's affirmation in reply at 2.) Respondent presents her argument as follows:
"Looking at the totality of the circumstances, [p]etitioner has engaged in a fraudulent scheme to deregulate the subject premises and the [c]ourt should order the disclosure of documents beyond the four-year look back rule. The subject premises is rent stabilized as it was built in 1923 and contains more than six units. Yet, for decades the subject premises was never registered with the Division of Housing and Community Renewal ("DHCR"). Petitioner has a statutory duty to file the proper regulatory status and legal regulated rent with [DHCR]. Rent Stabilization Code § 2528.3. In 2016 Petitioner filed retroactive rent registration statements for the years 2008 through 2016. The retroactive 2015 registration statement lists Linda Gonzalez as the tenant of record and a legal regulated rent of $1,405.79. The 2016 rent registration statement lists the apartment as vacant with a legal regulated rent of $1,702.60. The 2017 and 2018 registration statements list Shlomo Amsel as the tenant of record, a legal regulated rent of $3,150.00, and a preferential rent of $1,575.00. The subject premises has not been registered since 2018." (Id. at 2-3.)
Respondent points out that petitioner has voluntarily provided a number of documents to respondent in support of proper deregulation of respondent's apartment through Individual Apartment Improvement ("IAI") increases, a mechanism (available at the time) by which a landlord could increase rent by 1/40th of the cost of improvements. (Former 9 NYCRR § 2522.4 [a] [4].) Apparent from the rent registration history provided by petitioner, in 2017, petitioner registered an unexplained 85% increase to the legal regulate. (NYSCEF Doc No. 15, DHCR rent registration history; NYSCEF Doc No. 13, respondent's exhibit A at 2-14, leases provided by petitioner.)[FN11]
 Respondent also notes that "many of [the] improvements" purportedly made to her apartment in the amount of $60,000 as set forth in a "Contract to Perform Work" from a contractor "have not been made." (NYSCEF Doc No. 12, Hertzan affidavit ¶ 21.) Specifically, respondent avers,
"In 2017, my husband renovated my previous apartment. The apartment underwent a complete renovation. I was very involved with the renovation, picking out the material and discussing the cost with the contractor. . . .
Renovations to the subject premises costing over $60,000.00 would have been evident five years later when I moved. Specifically, they would have resulted in structural changes to the apartment. This was not done. I have seen inside other apartment on my line and they have the same layout as my apartment. When I moved into the apartment I could only see minor aesthetic changes to the apartment.
"My apartment has no French doors, the floors throughout the apartment are old and uneven, the plumbing in the bathroom is old, the toilet will constantly leak, the pipes in the living room are also old and leaking causing my living room ceiling to cave in, my kitchen countertops are not granite, I have no dishwasher in my apartment, no dimmer switches, no toggle switches to control the countertop light, and no fluorescent lighting fixture under the cabinetry." (Id. ¶¶ 19-21.)
Respondent's attorney further advances that respondent states she relied upon petitioner's representation that her apartment was not rent stabilized, because she received a market rate lease, and had no indication that her apartment may have previously been regulated. (NYSCEF Doc No. 28, respondent's attorney's reply affirmation at 4.) Respondent asserts:
"Previously, I did not know the subject premises was rent stabilized. The lease I signed was a market rate lease. I assumed the Landlord could charge whatever rent they wanted. I did not possess the legal knowledge to recognize that the subject premises is rent stabilized. I did not receive any notice stating my apartment was previously rent stabilized. Accordingly, I did not think my apartment was rent stabilized and that I could pull a rent history with DHCR. When I signed my lease I assumed the rent in the lease was proper as it was not a rent stabilized lease." (NYSCEF Doc No. 12, Hertzan affidavit ¶¶ 14-15.)
In its sur-reply, while acknowledging that after the Chapter Amendments passed "a court cannot solely rely on Burrows (emphasis added)" to make a determination as to whether fraud has been "properly raised," petitioner argues that the Chapter Amendments maintain the requirement that respondent specifically plead common law fraud as required by CPLR 3016 (b). (NYSCEF Doc No. 29, petitioner's attorney's sur-reply affirmation ¶¶ 26-27 ["CPLR 3016 [b] has not changed (emphasis in original)."]) Petitioner contends that respondent has not set forth a claim of fraud under either the common law fraud standard or the totality of the circumstances test, because (1) respondent's answer is verified only by her attorney and thus inadequate to plead a claim, and (2) because respondent has not supplied an affidavit based on her own personal knowledge of her claims. The court rejects this argument. First, respondent's attorney verified the proposed amended answer, just as petitioner's attorney verified the petition. CPLR 3020 provides that this is permissible when the attorney's office is in a different county than their client's. Petitioner's attorney's office is incorporated in Rockland County, and NYLAG's office is in New York County. Second, petitioner is incorrect that respondent herself has not attested to the facts and her impressions. (See NYSCEF Doc No. 12, Hertzan affidavit.) Respondent's affidavit, to the extent even necessary, fully rehabilitates her amended answer.
DISCUSSION
Presuming as it must that the relevant Chapter Amendment will pass constitutional [*5]muster,[FN12]
the court infers from the legislative history that the legislature intended to return us to the analysis of fraud utilized in pre-HSTPA overcharge cases, and, once a colorable claim that an owner knowingly engaged in a fraudulent scheme to deregulate a premises is properly raised, to allow the court more leeway in determining fraud. The "totality of the circumstances" test requires a court, or DHCR, to consider "all of the relevant facts and all applicable statutory and regulatory law and controlling authorities."
This court postulates that the holding in Regina can be reconciled with both pre-HSTPA law, and the new law. Relying on Thornton v Baron, 5 NY3d 175 (2005), specifically Matter of Grimm v New York State Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358 (2010), and Conason v Megan Holding, LLC, 25 NY3d 1 (2015) as precedent, the Regina Court famously stated, "The rule that emerges from our precedent is that, under the prior law, review of rental history outside the four-year lookback period was permitted only in the limited category of cases where the tenant produced evidence of a fraudulent scheme to deregulate and, even then, solely to ascertain whether fraud occurred — not to furnish evidence for calculation of the base date rent or permit recovery for years of overcharges barred by the statute of limitations (Grimm, 15 NY3d at 367." (Regina, 35 NY3d at 355.) In other words, if fraud is determined to have occurred, then the default formula is utilized to determine the base date rent upon which to calculate an overcharge. Thornton, Grimm, and Conason remain good law and are controlling authorities.
Courts are now clear as to what the default formula comprises. Courts now know when to apply the default formula, to wit, when it has been determined that the landlord has engaged in a fraudulent scheme to deregulate a premises. However, prior to the judicial interpretation that Regina required a traditional common law analysis for fraudulent deregulation claims, courts wrestled with how to reach a determination of fraudulent conduct precipitating deregulation of a premises on the part of a landlord. And, importantly, first and foremost, a tenant must raise "a colorable claim of fraud." But what is "a colorable claim?" This terminology evades a bright-line test; and perhaps it is intended to do so.
If Regina and its progeny laid this question to rest by purporting to define fraud in the context of deregulation as "common law fraud," then the Chapter Amendments have revived the debate, raising even more questions. What if footnote seven in Regina, when read completely, actually distinguishes common law fraud from fraud in the context of rent regulation? The second sentence of footnote seven, almost entirely ignored in favor of the infamous first sentence,[FN13]
states, "[i]n this context, willfulness means 'consciously and knowingly charg[ing] . . . improper rent' (emphasis added, internal citations omitted]." (Regina, 35 NY3d at 356 n 7.) Citing to Matter of Old Republic Life Ins. Co. v Thacher, 12 NY2d 48 (1962), the Regina Court notes that "'willful' in a regulatory context [] mean[s] [no more than] intentional and deliberate (emphasis added).'" (Id.) What if the Regina Court did not intend to exalt the first sentence over the second? What is the purpose of setting forth the common law elements of fraud, and then referring to fraud in the context of regulation? Was it significant that the Regina Court stated, [*6]"Nor is it necessary to recognize an additional common law exception that would create or increase the amount of overcharge damages in order to give proper effect to Roberts (emphasis added)"? (Regina 35 NY3d at 360.) By citing favorably to the seminal trilogy of Thornton, Grimm, and Conason in explicating "the rule" we are to follow, is it not reasonable to wonder whether the Regina Court was referring to Thornton, Grimm, and Conason as the common law rule, and distinguishing another common law rule by comparison?[FN14]
Can it be concluded that fraud in the "context" of determining regulatory status is different from common law fraud?
Common Law vs Regulatory Fraud
There is a dearth of New York case law regarding regulatory fraud. A recent search on Westlaw for the term "regulatory fraud" in New York yielded only one (1) result.[FN15]
A broader search (for fraud in the regulatory context), filtering the results to cases dealing with rent stabilization ("rent stab!"), yielded only nine (9) results, none of which provide any guidance regarding why fraud might be construed differently in a regulated housing market than in an unregulated market. Most regulatory fraud claims arise in the context of federal law and regulations, e.g., the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Securities and Exchange Act. Nevertheless, those cases are instructive here because they arise in the context of heavily regulated industries and can be analogized  albeit less than perfectly because they do arise in the specific context of rent regulation  to issues involving the heavily regulated rent stabilized housing stock in New York.
In a 2005 comment in the University of Chicago Law Review, referring to the complex series of requirements to which participants in the regulated securities market must adhere, the author, Brian Rubens, postulates that "there are two types of fraud statutes." [FN16]
The first type of fraud is "generic fraud . . . [which] essentially fill[s] the role that common law fraud holds at the state level. They act to enforce the upper boundary of acceptable conduct in unregulated markets (emphasis added)."[FN17]
The second type is "[t]he 'focused' type [of fraud], which operates in regulated markets with significant legislative guidance, [and] uses a different definition of fraud given the entirely different circumstances in which it operates (emphases added)."[FN18]

Rubens turns to the Securities and Exchange Act and FDCA as examples to illustrate his point:
"Within the tightly delineated boundaries of the regulated market, the strict common law controls on fraud are not necessary. In regulated markets, judges have detailed enumerations of specific prohibitions to guide their discretion. Potential defendants are put on notice by the substantive provisions of the statute, which carefully lay out acceptable conduct. 'Fraud' language is still used because it is a traditional hallmark of market regulation. But the 'focused' fraud statute requires different qualifications from its fraud language.
'Fraud' in this case is being used in a highly regulated market where the government has consciously placed burdens on suppliers in order to establish a regime that protects the uninformed public. Rather than the narrowly constrained common law characteristics that are appropriate in an unregulated market definition of fraud, a broader definition of fraud is appropriate to shift the burden onto knowledgeable parties in the regulated market context."[FN19]
It is remarkable that Rubens could just as easily have been referring to the rent stabilization regime.
In another section of Rubens' comment, analyzing a Federal Court of Appeals circuit court split regarding the standard for determining fraud in the regulatory context, Rubens asks "whether there is a difference between free-market, common law fraud and public-welfare regulatory fraud  and if so, what the difference means[.]"[FN20]
Rubens posits that some circuit courts have adopted a more lenient standard for determining fraud in the regulatory context of the FDCA. Decisions from the Fourth and Eighth Circuits instruct that fraud "is shown when the evidence demonstrates that the defendant has deliberately frustrated the purpose for which registration [of manufacturing premises] is required .... The inquiry, therefore, is whether the defendant designed his conduct to avoid the regulatory scrutiny of the [agency]."[FN21]
Rubens continues, "With this relaxed standard, the regulatory fraud interpretation of 'to defraud or mislead' maintains a scienter requirement while ensuring a greater ease of prosecution than with the background common law standard."[FN22]
Again, a distinct regulatory context, but with evident applicability to the case at bar.
Notwithstanding that the federal cases parsed by Rubens involve criminal penalties for fraud, as opposed to punitive monetary penalties at issue here, the conclusion Rubens reaches is that a broader construct of fraud in the regulatory context better serves the ameliorative purposes [*7]of statutes and regulations enacted to protect the public. "The purpose of [a regulatory] regime, to protect the public [], has been recognized by the Supreme Court as the key principle in interpreting the statute (emphasis added)."[FN23]
Rubens succinctly propounds his thesis in the final sentence of the article: "Adopting the regulatory conception of fraud, with its broader intent standard, best gives effect to Congress's purpose in enacting the FDCA and effectively rebuts the presumption in favor of common law incorporation.[FN24]

Similarly, here, because "the rent stabilization laws were enacted to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices," the court must look to this purpose when interpreting the legislative intent of L 2024, ch 95, § 4. (Hughes v Lenox Hill Hosp., 8 AD3d 140, 140 [1st Dept 2004] [internal citations and quotation marks omitted].) "The central, underlying purpose of the [Rent Stabilization Law] is to ameliorate the dislocations and risk of widespread lack of suitable dwellings" that accompany a housing crisis. Noting their remedial nature, this Court has repeatedly interpreted laws regulating rents broadly to effectuate their intended purpose (internal citations and quotation marks omitted)." (Fed. Home Loan Mtge. Corp. v. New York State Div. of Hous. & Cmty. Renewal, 87 NY2d 325, 332 [1995].) Looking to the purposes of the Rent Stabilization Law as a guiding principle, the court finds that a broader, more flexible definition of fraud better serves the public policy behind rent stabilization.
A Colorable Claim of Fraud and the Totality of the Circumstances
The Chapter Amendments require a tenant to properly raise "a colorable claim of fraud." This terminology has persisted in every iteration of the law pre-HSTPA,[FN25]
in Regina,[FN26]
and today.[FN27]
"A colorable claim is a plausible legal claim. This means that the claim is 'strong enough' to have a reasonable chance of being valid if the legal basis is generally correct and the facts can be proven in court."[FN28]
That the legislature chose to use this deep-rooted diction should come as no surprise and requires little interpretation beyond the guidance provided in the controlling authorities of Thornton, Grimm, and Conason. The "requisite factors" of a properly raised colorable claim of fraud are cogently distilled from Grimm in Pehrson v Div. of Hous. & [*8]Cmty. Renewal of State, 34 Misc 3d 1220 (A), 2011 NY Slip Op. 52487 (U) (Sup Ct, New York County 2011).[FN29]

Here, again, an analogy to another body of law is helpful. In Illinois v Gates, 462 US 213 (1983), a criminal case involving the standard for a finding of probable cause for a search warrant, an inflexible two-pronged test for determining probable cause for a search warrant was abandoned by the Court and replaced by a totality of circumstances approach. The Court described this new test as a "flexible, common-sense standard[.]" (Gates, 462 US at 214, 239.) A judge need only have a "substantial basis for determining" that a search warrant (investigation) will reveal evidence of a crime. (Id. at 238.) Just as with regulatory fraud, which utilizes a broader definition of fraud to best promote the purposes of a regulatory regime, the Supreme Court in Gates explained that when balancing the concerns of the government against the right to protection from unreasonable searches and seizures, the totality of the circumstances is preferred over rigid formulas because it is a "flexible, easily applied standard [which] will better achieve the accommodation of public and private interests." (Id. at 239.) The Court explicated that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." (Id. at 232.) Neither is the construct of fraud in the context of deregulation susceptible to a bright-line test.[FN30]
The legislature recognizes this hypothesis in the new law. Accordingly, if a tenant evinces a substantial basis for inferring the probability that fraud exists (a colorable claim), then the court or DHCR will determine whether a wrong (a fraudulent stratagem to remove a premises from rent regulation) actually exists. If so, then the default formula will be employed to calculate any resulting overcharge.
Viewed as it is herein within the "regulatory context" of the regulated housing in New York  the purpose of which is to promote stability and affordability in housing  this construction also harmonizes Regina's footnote seven with Thornton, Grimm, and Conason. At the same time, this reading of the new law also remedies what the legislature and some judges view as an unintended judicial interpretation of Regina that took footnote seven too far — e.g. Burrows [FN31]
— and recognizes that the elements of fraud, in particular justifiable reliance, must be considered in the context of the true nature of landlord-tenant relationships which are marked by unequal sophistication and bargaining power between the parties, generally sophisticated property owners and the public at large.[FN32]

Contrary to petitioner's argument, each element of a common law fraud claim no longer must be pleaded. Indeed, not every element must be proven. This is explicitly stated by the legislature, which has appropriately imported the more flexible totality of the circumstances test into the calculus. Now, a court is constrained to consider the totality of the circumstances that surround an occurrence such as deregulation to determine whether fraud exists after a tenant raises a colorable claim. This does not mean that fraud actually exists, only that the duty of DHCR or a court of competent jurisdiction to investigate further has been precipitated. Indeed, [*9]upon investigation and consideration of the facts, a court or DHCR might find that no fraud actually exists. But the duty to investigate a colorable claim of fraud is sacrosanct. As the Appellate Division, First Department stated in Grimm,
"Given the specific facts of this case, DHCR should not be allowed to turn a blind eye to what could be fraud and an attempt by the landlord to circumvent the Rent Stabilization Law ... "[W]here, as here, there is an indication of possible fraud that would render the rent records unreliable, it is an abuse of discretion for DHCR not to investigate it (emphasis added) (internal quotation marks omitted)." (Grimm, 15 NY3d at 364 (quoting Grimm v New York State Div. of Hous. & Community Renewal Off. of Rent Admin, 68 AD3d 29, 33 [1st Dept 2009].) In Conason v Megan Holding, LLC, 25 NY3d 1 (2015), cited favorably by the Regina Court and decided after Grimm and Thornton  both cited in Regina as precedent  the Court hailed Grimm as defining a "colorable claim."
"Here, tenants do not just make a generalized claim of fraud. They instead advance a colorable claim of fraud within the meaning of Grimm—i.e., tenants alleged substantial evidence pointing to the setting of an illegal rent in connection with a stratagem devised by [the landlord] to remove tenants' apartment from the protections of rent stabilization." (Conason, 25 NY3d at 16.)
The Conason Court also understood the desirability of recognizing the fluid nature of the totality of the circumstances test:
"[W]hatever the minimum scope of the inquiry that must be made by the courts or DHCR to resolve an overcharge claim where fraud has been alleged and there exist substantial indicia of fraud on the record, and whatever minimum quantum of evidence is required for a tenant to establish fraud sufficient to taint the reliability of the rent on the base date (see Grimm, discussed earlier), these thresholds have been crossed here: Civil Court made extensive findings of fraud based on a record developed at a trial, which afforded both sides the opportunity (even though shunned by defendants) to submit evidence and present and cross-examine witnesses regarding the apartment's rental history." (25 NY3d at 18.)
The law is thus: In the context of the rent stabilization regime, a tenant must set forth "more than a generalized claim" of fraud ("a colorable claim") within the definition of Grimm and Perhson to enable a court, or DHCR, to infer a landlord's fraudulent scheme to evade remedial rent regulations which, in turn, gives rise to a duty to investigate further (past the lookback period) to determine, by considering all controlling authorities  and all the circumstances surrounding the alleged fraudulent deregulation  if a fraudulent scheme actually exists so as to apply the default formula to calculate a resulting overcharge.
Application of the Chapter Amendments to Respondent's Motion
Petitioner's unyielding adherence to the heightened pleading standard for common law fraud as the sum of its argument in opposition to respondent's motion, once a viable position, has been displaced by the Chapter Amendments. Here, the legislature imported the elements of common law fraud  previously eliminated in L 2023, ch 760  only to clarify that all the elements need not be proven. The standard of proof for common law fraud is "clear and [*10]convincing evidence." (Gaidon v Guardian Life Ins. of America, 94 NY2d 330, 349-350 [1999] ["The elements of fraud are narrowly defined, requiring proof by clear and convincing evidence (internal citation omitted)."] Common sense dictates that a tenant cannot be required to plead with specificity every element of common law fraud, when they do not have to prove every element at trial.
Petitioner purchased the building in December 2007, yet did not file any registration statements for the subject apartment until 2016. (NYSCEF Doc No. 19, respondent's exhibit G, deed; NYSCEF Doc No. 15, respondent's exhibit C, DHCR rent registration history.) In August 2016, petitioner retroactively registered the apartment for the years 2008 through 2015. (NYSCEF Doc No. 15, respondent's exhibit C, DHCR rent registration history.) The increases taken on the legal registered rent ("LRR") reported on the initial retroactive registration in 2008 follow allowable Rent Guidelines Board Order ("RGBO") increases (with some de minimis exceptions).
The registration statement for 2016 indicates the apartment was vacant but also reflects a vacancy increase in excess of the allowable increase at the time for a two-year lease of twenty percent, pursuant to RGBO No. 47 and No. 48, which provide the applicable vacancy percentage increases for leases that commenced in 2016. (NYSCEF Doc No. 15 at 5.) Petitioner entered into a two (2) year lease, commencing May 1, 2016 and ending April 30, 2018, with Shlomo Amsel, at a monthly preferential rent of $1,575. The only rider attached to this lease is a "Temporary Rent Concession Rider," indicating that the LRR is $3,150, well above the vacancy deregulation threshold at the time,[FN33]
but with no rider explaining the increase in rent, much less notifying the tenant that the apartment had reached the then-threshold for vacancy deregulation.[FN34]
(NYSCEF Doc No. 13 at 9-11.) In 2018, petitioner filed both a retroactive 2017 registration and a current registration for 2018, which both reflect the two (2) year lease from May 1, 2016 through April 30, 2018, at a LRR of $3,150 and a preferential rent of $1,575. (NYSCEF Doc No. 15 at 5.) Petitioner then entered into a one (1) year rent-stabilized lease renewal with Shlomo Amsel and Yaakov Amsel, commencing May 1, 2019 (the lease does not indicate whether the tenants selected a one-year at a preferential rent of $1,625, or a two-year lease term at the LRR of $3,269.11.) (NYSCEF Doc No. 13 at 13.) Despite entering into this rent-stabilized lease renewal, petitioner ceased registering the apartment altogether after 2018, without ever filing any registration statement explaining how, if at all, the apartment was exempt from rent stabilization. (NYSCEF Doc NO. 5 at 5-6.) Respondent's unregulated lease commenced April 1, 2020 for a one year term, expiring March 31, 2021, at a monthly rental of $1,800. (NYSCEF Doc No. 13 at 3.)
Following the Pehrson guidelines,[FN35]
the court finds that respondent has properly raised a [*11]colorable claim of a fraudulent scheme to deregulate the subject apartment. Petitioner violated the Rent Stabilization Law by (1) failing to file registrations consistent with the leases in effect at the time of the registrations, (2) by failing to accurately reflect when the apartment was deregulated, and (3) by failing to provide Shlomo Amsel with a lease rider which explains the first rent after deregulation and charging Amsel a rent of exactly half ($1,575) that which petitioner claims to be the LRR of $3,150, thus likely lulling Amsel not to challenge the deregulation.[FN36]
Respondent's detailed, credible affidavit which generally disputes the contractor's purported scope of work based on her past experience with an apartment-wide renovation, and specifically disputes improvements such as marble countertops, and appliances, raise more questions about what improvements were actually made and how much the improvements cost. Respondent's affidavit rises far above "mere skepticism." (Cf Breen v 330 E. 50th Partners, LP, 154 AD3d 583, 584 (1st Dept 2017).
Respondent's colorable claim triggers the court's duty to investigate further to determine the propriety of the deregulation. Respondent's answer must be amended nunc pro tunc to May 17, 2023, the date the original answer was filed to reflect this colorable claim.[FN37]
Thus, May 17, 2017 is the base date for calculation of any overcharge unless a fraudulent scheme to deregulate the premises is revealed.[FN38]
Respondent's claim of unlawful deregulation is not temporally limited. (E.W. Renovating Co. v New York State Div. of Hous. and Cmty Renewal, 16 AD3d 166, 167 [1st Dept 2005] ["DHCR's consideration of events beyond the four-year period is permissible if done not for the purpose of calculating an overcharge but rather to determine whether an apartment is regulated (internal citations omitted)."]; Thurman v Sullivan Props. LP, 226 AD3d 453 [1st Dept 2024], citing E.W. Renovating Co.). Discovery is granted as to [*12]respondent's claims in order to facilitate the trial.[FN39]
Because petitioner has owned the building since the building was purportedly deregulated, and the document demands are narrowly tailored (modified as they are as set forth below) petitioner will not be prejudiced. Because fraudulent overcharge must be accompanied by a fraudulent deregulation, respondent's demands are limited to September 1, 2015 forward, the day after the expiration of Linda Gonzalez's lease, through March 31, 2020, the day before respondent's initial unregulated lease commenced.
CONCLUSION
Accordingly, it is
ORDERED that respondent's motion to amend her answer is granted pursuant to CPLR 3025 and the amended answer is deemed served and filed as of May 17, 2024; and it is further
ORDERED that respondent's motion for leave of court to conduct discovery pursuant to CPLR 408 and CPLR Article 31 is granted; and it is further
ORDERED that respondent shall serve discovery demands which comport with this decision and order upon petitioner's counsel within three (3) business days; and it is further
ORDERED that the proceeding is marked off the court's calendar to enable petitioner to produce documents pursuant to the document demands within 45 days of receipt of same from respondent as set forth above preserving all objections and supplying a "Jackson affidavit" regarding any documents that could not be located after a diligent search was conducted;[FN40]
and it is further
ORDERED that the parties shall make good faith efforts to resolve all discovery disputes without court intervention, and be able to demonstrate same to the court; and it is further
ORDERED that either party may restore this proceeding to the court's calendar by eight (8) days' notice of motion for appropriate relief including motion practice pursuant to CPLR Article 31 or trial.
This constitutes the decision and order of this court.
DATED: June 21, 2024
Brooklyn, New York
KAREN MAY BACDAYAN, JHC

Footnotes

Footnote 1: This section borrows liberally from a decision of this court issued on June 11, 2024 which involved a more narrow analysis of the new law. See 41-47 Nick LLC v Odumosu, 2024 NY Slip Op 24167, *3-5 (Civ Ct, New York County 2024).
Footnote 2:"Fraud consists of evidence [of] a representation of material fact, falsity, scienter, reliance and injury (internal quotation marks and citations omitted)." Regina, 35 NY3d 332, 356, n 7.
Footnote 3:See Wise v 1614 Madison Partners, LLC, 214 AD3d 550, 550 (1st Dept 2023) ("The court correctly determined that the four-year statute of limitations under the former CPLR 213—a governed the rent overcharge claims, which accrued prior to the enactment of the Housing Stability and Tenant Protection Act." But see 9 NYCRR 2523.7 (b) (owners "shall not be required to maintain or produce any records relating to rentals of such accommodation more than six years prior to the most recent registration or annual statement for such accommodation" but may destroy older records at their own risk).
Footnote 4:Because a tenant cannot obtain the rent registration history from the Division of Housing and Community Renewal ("DHCR") prior to executing a lease, the Burrows reasoning also eschews the general principle that a party "must take [] reasonable steps to protect itself against deception [and] requires a plaintiff claiming [fraud] . . . to allege that, before entering into the transaction, it availed itself of the opportunity to verify the [other party's] representations[.]" Basis Yield Alpha Fund Master v Morgan Stanley, 136 AD3d 136, 141-142 (1st Dept 2015) (emphasis added).
Footnote 5:Brunetti v Musallam, 11 AD3d 280, 281 (2d Dept 2004). In Brunetti, the Appellate Division, Second Department reversed the trial court, finding that the court erred in dismissing the proceeding on summary judgment. "[T]he motion court should not have resolved factual issues by determining, based on this record, that defendants established as a matter of law that plaintiff could not prove all the elements of his fraud claim. The issues of material misrepresentation and reasonable reliance, essential elements of a fraud claim, are not subject to summary disposition." Id. (internal citations omitted). 

Footnote 6:Gary M. Rosenberg and Ethan R. Cohen, "The 'Fraud Exception' Requires Fraud," NYLJ, Aug. 2, 2023, available online at https://www.law.com/newyorklawjournal/2023/08/01/the-fraud-exception-requires-fraud/ (last accessed June 19, 2024).
Footnote 7:See e.g. Anthony Morreale, "The 'Totality of the Circumstances' Surrounding the New Statutory Definition of a Fraudulent Deregulation Scheme," Belkin, Burden, Goldman, LLP Update, Spring 2024, Vol. 70, available online at https://bbgllp.com/wp-content/uploads/2024/03/BBG_Newsletter_Spring2024.pdf (last accessed June 19, 2024) ("By attempting to redefine the fraud exception retroactively, the legislature's bill raised serious questions of its constitutionality.")
Footnote 8:"We now follow in the footsteps of the Legislature, which passed the Rent Regulation Reform Act of 1997 and clarified the law on overcharges. These amendments make clear that Burrows is no longer good law, and are (sic) returned to the Thorton (sic), Grimm, Connison (sic) line of cases." Assembly Member Rosenthal, Transcript of Assembly Floor debate, page 33, available at https://www2.assembly.state.ny.us/write/upload/transcripts/2023/2-13-24.pdf#search="8011, last accessed June 19, 2024; see also Assembly Mem in Support of 2023 NY Assembly Bill A06216, incorporated in L 2023, ch 760, available at https://nyassembly.gov/leg/?default_fld=%0D%0A&leg_video=&bn=A06216A&term=&Actions=Y&Memo=Y (last accessed June 19, 2024) ("This amendment will help clarify and codify the standard for applying a fraud exception to the four-year rule that was in place before HSTPA was enacted in light of Burrows v 75-25 153rd Street.")

Footnote 9:See, Itzkowitz PLLC Blog, The "F" Word — the NYS Legislature Takes a Stab at Defining "Fraud" in the Rent Stabilization Context, But in So Doing, Raises More Questions Than It Provides Answers, https://itkowitz.com/blog/2023/12/the-f-word-the-nys-legislature-takes-a-stab-at-defining-fraud-in-the-rent-stabilization-context-but-in-so-doing-raises-more-questions-than-it-provides-answers.html (June 21, 2024 7:48 a.m. ("But then, if a 'fraudulent scheme to deregulate' is not the same as common law fraud, then what is it? If one cannot look to common law fraud to establish elements of a fraudulent scheme to deregulate, then where do we look for the elements of a claim of a fraudulent scheme to deregulate? The statute asks us to look at the 'totality of the circumstances'. Which circumstances? If there 'need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury', then one assumes we can still rely upon the presence of some of those elements, combined with the overall circumstances of the matter. . . . It is almost as if the legislature is saying to the courts, "Come on, you know a fraudulent scheme to deregulate when you see it (emphasis in original)."
Footnote 10:In Housing Court, because discovery is conducted only by leave of court, a litigant must be able to demonstrate ample need for discovery related to a cause of action or defense, discovery regarding fraudulent overcharge claims is inextricably entwined with proper pleading. See CPLR 408; New York Univ. v Farkas, 121 Misc 2d 643, 647 (Civ Ct, New York County 1983) ("In determining whether a party has established ample need for discovery, courts consider a number of factors, not all of which need be present in every case, including: (1) whether the movant has asserted facts to establish a claim or defense; (2) whether there is a need to determine information directly related to the claim or defense[.]" The Farkas court expressly stated that discovery "should never be permitted" where it is being utilized to formulate a cause of action of "establish a defense.[.]" Id.
Footnote 11:Not relevant here, IAI increases were amended as part of L 2024, ch 56, Part FF, § 3, increasing the aggregated maximum cost from $15,000 to $30,000.

Footnote 12:Petitioner has not advanced a constitutional challenge. Regardless, "[L]egislative enactments are entitled to a 'strong presumption of constitutionality'."

Footnote 13:See n 2, supra.
Footnote 14:Common law is defined as "law that is derived from judicial decisions instead of from statutes." Cornell Law School, Legal Information Institute, available online athttps://www.law.cornell.edu/wex/common_law (last accessed June 19, 2024).
Footnote 15:Rodriguez v. Fredericks, 213 AD2d 176, 177 (1st Dept 1995) — a legal malpractice action which notes that nominal damages of $1 were awarded against defendants for "regulatory fraud claims" without definition or further explication.
Footnote 16:Brian Rubens, Comment, Common Law Versus Regulatory Fraud: Parsing the Intent Requirement of the Felony Penalty Provision of the Food, Drug, and Cosmetic Act, 72 U. Chi. L. Rev. 1501, 1523, 1526 (2005).
Footnote 17:Id. at 1524.
Footnote 18:Id. at 1526.
Footnote 19:Id. at 1525-1526.
Footnote 20:Id. at 1515.
Footnote 21:Id. at 1519.
Footnote 22:Id.
Footnote 23:Id. at 1531; see also U.S. v Dotterweich, 320 US 277 (1943).
Footnote 24:Id. at 1532.

Footnote 25:Matter of Grimm v State of NY Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 367 (2010) ("Generally, an increase in the rent alone will not be sufficient to establish a 'colorable claim of fraud, and a mere allegation of fraud alone, without more, will not be sufficient [to pierce the lookback period] (emphasis added).")
Footnote 26:Regina,35 NY3d at 362 (referring to one of the four consolidated cases therein and holding that "the complaint was properly dismissed based on the tenants' failure to allege a colorable claim of fraud . . . . (emphasis added).")

Footnote 27:L 2023 ch 760, Part B, § 2 (b), as amended by L 2024, ch 95, § 4.
Footnote 28:Cornell Law School, Legal Information Institute, available at https://www.law.cornell.edu/wex/colorable_claim (last accessed June 19, 2024).
Footnote 29:In Pehrson, the tenant filed an Article 78 proceeding to challenge DHCR's denial of an overcharge complaint. The Supreme Court found that the facts and circumstances alleged by the tenant "support[ed] the requisite factors set forth in Grimm [and] trigger[ed] DHCR's duty to ascertain whether those allegations of fraud in the record, in turn, warrant[ed] the use of the default formula in calculating any rent overcharge . . . ." Pehrson, 2011 NY Slip Op. 52487 (U), *2. The Pehrson court set out three categories of actions set forth in Grimm, which together can demonstrate sufficient indicia of fraud, to wit: "(1) The tenant alleges circumstances that indicate the landlord's violation of the Rent Stabilization Law (RSL) and Rent Stabilization Code (RSC) in addition to charging an illegal rent. (2) The evidence indicates a fraudulent scheme to remove the rental unit from rent regulation. (3) The rent registration history is inconsistent with the lease history." Id. Applying these factors, the Supreme Court found that "the evidence in the record establishes a colorable claim of the landlord's fraud." Id. The proceeding was remanded to DHCR.
Footnote 30:See n 5, supra.

Footnote 31:After New York courts almost universally agreed that common law fraud must be properly pleaded, Burrows held that justifiable reliance could not be demonstrated if public records, such as a DHCR rent registration history, could be examined to reveal a representation of fact upon which a tenant claiming unlawful deregulation or fraudulent overcharge could have discovered. Burrows went so far as to apply this standard to current and predecessor tenants. After Burrows  disregarding the fact that DHCR rent registration histories are not available to tenants until after they sign the lease  claims of fraud were eliminated at the pleading stage because "disclosure in the publicly available rental histories of the discrepant figures for legal regulated rent and preferential rent negates any inference of fraud as a matter of law (emphasis added)." Burrows, 215 AD3d at 113. The subjective element of justifiable reliance between parties of unequal sophistication and bargaining power became an objective, bright-line rule.
Footnote 32:See Kimmell v Schaefer, 89 NY2d 257 (1996) ("Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact. In determining whether justifiable reliance exists in a particular case, a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.")
Footnote 33:Former Rent Stabilization Law of 1969 [Administrative Code of the City of NY] § 26-504.2.
Footnote 34:The court presumes that petitioner's position is that the apartment was deregulated after Linda Gonzalez's vacatur and prior to Shlomo Ansel's initial occupancy in May 2016.

Footnote 35:Replicated here for ease of reading: "(1) The tenant alleges circumstances that indicate the landlord's violation of the Rent Stabilization Law (RSL) and Rent Stabilization Code (RSC) in addition to charging an illegal rent. (2) The evidence indicates a fraudulent scheme to remove the rental unit from rent regulation. (3) The rent registration history is inconsistent with the lease history." Pehrson, 2011 NY Slip Op. 52487 (U), *2.
Footnote 36:Referring to Thornton v Baron, the Conason Court explained "we declined to read the four-year limitations period in a way that would allow a landlord whose fraud remains undetected for four years—however willful or egregious the violation—[to], simply by virtue of having filed a registration statement, transform an illegal rent into a lawful assessment that would form the basis for all future rent increases (internal citations and quotation marks omitted)." Conason, 25 NY3d 1 at 14 (2015).
Footnote 37:CPLR 3025; CPLR 203 (f) ("A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.") Here, the original answer, filed by respondent's attorney on May 17, 2023, certainly placed petitioner on notice of the transactions and occurrences that underlie respondent's claim of fraud.
Footnote 38:But see n 3, supra.
Footnote 39:CPLR 3101 (a) states in relevant part that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action (emphasis added)[.]" These words "are . . . to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial." Siegel v Snyder, 202 AD3d 125, 130 (2d Dept 2021) (internal citations and quotation marks omitted).
Footnote 40:"Jackson Affidavits" are frequently used in New York courts to confirm that documents requested as part of discovery have been searched for and not found. See Jackson v City of New York, 185 AD2d 768 (1st Dept 1992). A proper Jackson affidavit will indicate "where the subject records were likely to be kept, what efforts, if any, were made to preserve them, whether such records were routinely destroyed, or whether a search had been conducted in every location where the records were likely to be found[,]" such that a court may infer a good faith effort to comply with discovery demands. Id. at 770.